# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### GREENBELT DIVISION

| | |
|---|---|
| SHARNEE SMITH, individually and on behalf of all other similarly situated, | **Case No. 8:22-cv-00984-PX** |
| v. | **FLSA Collective Action** |
| SODEXO, INC., SODEXO MANAGEMENT, INC., and SODEXO OPERATIONS, LLC, | |

## AMENDED SETTLEMENT AGREEMENT AND RELEASE

This Amended Settlement Agreement and Release (the "**Settlement Agreement**") is entered into by and between Plaintiff Sharnee Smith ("**Smith**"), on behalf of herself, and on behalf of all members of the Putative FLSA Collective (as that term is defined herein) (together, Smith, the Putative FLSA Collective and Releasees are the "**Parties**"), pertaining to the alleged failure of Releasees (as that term is defined herein) during the time period December 6, 2021 through March 12, 2022, to accurately pay employees due to the Ultimate Kronos Group ("**Kronos**") experiencing a cybersecurity incident beginning on or about December 11, 2021, with respect to Kronos Private Cloud, which Sodexo used for certain payroll and timekeeping functions for certain non-exempt employees (the "**Kronos Outage**"). This Settlement Agreement replaces the Settlement Agreement executed by the parties on April 19, 2023,with the prior Settlement Agreement no longer of any force or effect.

WHEREAS, on April 22, 2022, Smith commenced litigation under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, in the U.S. District Court for the District of Maryland (the "**Court**") in the above captioned matter (the "**Lawsuit**"), on behalf of herself, and on behalf of all current or former non-exempt employees of Releasees who worked in the United States at any time since the onset of the Kronos Outage;

WHEREAS, the Parties determined to attempt to resolve the claims on a global basis and retained mediator Hunter Hughes, Esq. to assist in that effort. After the provision of data and other information from Releasees and upon investigation by Plaintiff and her counsel of the claims in the Lawsuit, on January 27, 2023 and February 7, 2023, the Parties participated in mediation sessions facilitated by Mr. Hughes, during which the Parties discussed the claims and defenses relating to the Lawsuit.  Subsequent to the second mediation the Parties considered a mediator's proposal submitted by Mr. Hughes, which was ultimately accepted by both Parties;

WHEREAS, the Parties have made a thorough and independent investigation of the facts and law relating to the allegations in the Lawsuit. In entering into this Settlement Agreement, the Parties have considered: (a) the facts developed during an informal



confidential exchange of information and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged; and (c) the desirability of consummating this settlement according to the terms of this Settlement Agreement. The Parties have each concluded that the terms of this Settlement Agreement are fair, reasonable and adequate, and that it is in their best interests to settle the Lawsuit pursuant to the terms set forth herein;

WHEREAS, in order to avoid the expense and burdens of further litigation, the Parties desire to resolve any and all suits, actions, causes of action, claims, or demands based on putative violations of the FLSA as well as putative violations of any state or local law related or pertaining to Releasees' alleged failure to accurately pay employees for all hours worked and all claims under the FLSA and any state or local law for the time period December 1, 2021 through the date of court approval of this settlement, relating to or arising out of the Kronos Outage, including, without limitation, all state, local, and federal claims for unpaid wages (whether minimum wage or overtime), failure to timely pay wages, failure to record hours worked, paystub requirements, regular rate claims, reimbursement, and all related claims for statutory damages or penalties, interest, liquidated damages, attorneys' fees, costs, expenses, and all other such amounts, and including, without limitation, all claims that have been asserted in the Lawsuit or that could have been asserted in the Lawsuit nationwide;

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises hereinafter set forth, the Parties agree as follows:

DEFINITIONS

1.    **Definitions**. The following terms used in this Settlement Agreement shall have the meanings ascribed to them below:

   a.    "Putative FLSA Collective" means all non-exempt employees, regardless of exact job, position held, or title, employed by Sodexo in the United States from December 6, 2021 to March 12, 2022, who (i) were employed in a job position that used (or would have used but for the Kronos Outage), Kronos Private Cloud to track their hours worked, and (ii) who fall within one or more of the Collective Groups set forth in (1)(j). Each such individual shall be a "Putative FLSA Collective member."

   b.    "FLSA Collective" means those Putative FLSA Collective members who have participated in this settlement by returning an executed Consent to Join Form and whose Form has been filed with the Court.

   c.    "Releasees" means Sodexo, Inc., Sodexo Management, Inc., and Sodexo Operations, LLC (collectively "Sodexo"), and each of their past, present, and future parent companies; subsidiaries; predecessors; affiliates; divisions; agents; managers; owners; members; officers; directors; partners; investors; legal representatives; accountants; trustees; executors; administrators; real or alleged alter egos; predecessors; successors; transferees; assigns; attorneys; and insurers.

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

d.    "Plaintiffs' Counsel" or "Collective Counsel" means PARMET PC and MORGAN & MORGAN, P.A.

e.    "Releasees' Counsel" means Ogletree Deakins.

f.    "Settlement Administrator" refers to the third-party settlement administrator, to be mutually agreed upon by the Parties at the cost of a reasonable market rate, which will be retained to perform at least the following duties: (i) mailing notice and consent to join forms  (ii) notifying the Parties of FLSA Collective Members who join this settlement (iii) mailing settlement checks, and applicable tax forms to FLSA Collective members;; and (iv) calculating individual settlement awards, including any appropriate withholdings.

g.    Gross Cash Settlement Amount. The Gross Cash Settlement Amount is $3,100,000, inclusive of payment for: (a) all FLSA Collective members; (b) the General Release Payment to Smith; (c) all attorneys' fees, costs, and litigation expenses approved by the Court; (d) the FLSA Collective Members' share of applicable federal, state, and local taxes required to be withheld by Sodexo; and (e) all costs and fees owed to the Settlement Administrator incurred in the administration of this settlement.

h.    Non-Cash Settlement Relief**.** Releasees' agreement that they shall waive any legal right they may have to recoup any overpayment amounts made to FLSA Collective members resulting from the Kronos Outage that have not been collected yet by Sodexo. The approximate overpayment amount for which Sodexo is agreeing to forego recoupment is $8,000,000.

i.    Net Settlement Amount. The amount remaining from the Gross Cash Settlement Amount after the following amounts have been deducted: (i) amount approved by the Court and Affirmed by the Court for a General Release Payment to Smith; (ii) the amount approved by the Court and Affirmed by the Court for the FLSA Collective's attorneys' fees, expenses, and costs; and (iii) the amount owed for Settlement Administration costs to the Settlement Administrator for performing any duties necessary to administer the settlement ("Administration Costs").

j.    Collective Groups. The following are the Collective Groups that comprise the Putative Collective and FLSA Collective. The Collective Groups have been determined based upon the complete pay and time period at issue, as a result of the allegations at issue in the Lawsuit. The Parties acknowledge that Putative Collective and FLSA Collective members may fall within one or more of the following Collective Groups.  The total number of unique employees in the Putative FLSA Collective (inclusive of all Collective Groups) is approximately 45,507.

    i.    "Net-Under" means those Putative FLSA Collective and FLSA Collective members who were potentially underpaid during the Kronos

- 3 -

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

Outage and remain underpaid. This group encompasses approximately 2,632 employees (some of whom may also fall within one or both of the other Collective Groups set forth in this section).

ii.     "Net-Under Previously Paid" means those Putative FLSA Collective and FLSA Collective members who were allegedly paid "late" (i.e., potentially underpaid during the Kronos Outage but who previously received such underpayment from Releasees before this settlement.) This group encompasses approximately 17,459 employees (some of whom may also fall within one or both of the other Collective Groups set forth in this section).

iii.    "Non-Exempt Protected States" means those Putative FLSA Collective and FLSA Collective members who during the Kronos Outage worked in the following states: AZ, CA, CT, IL, IN, MA, MD, ME, NJ, NM, NY, OH, VA, WA. This group encompasses approximately 25,673 employees (some of whom may also fall within one or both of the other Collective Groups set forth in this section).

**2.      No Admission of Liability or Determination as to the Merits**. Releasees deny the allegations made in the Lawsuit and deny that they engaged in any wrongdoing or violation of law. Except for purposes of this settlement, neither this Settlement Agreement, nor any document referred to herein, nor any action taken to carry out this Settlement Agreement, may be used in any way as an admission, concession, or indication by or against Releasees of any fault, wrongdoing, or liability whatsoever.

RELEASE

**3.      Release**. In consideration for the benefits to be received by Smith and the FLSA Collective members under this settlement:

a.      Smith and the FLSA Collective members shall be deemed to have released and forever discharged Releasees from all suits, actions, causes of action, claims, or demands based on putative violations of the FLSA as well as putative violations of any state or local law related or pertaining to Releasees' alleged failure to accurately pay employees for all hours worked and all claims under the FLSA and any state or local law for the time period December 1, 2021 through the date of court approval of this settlement, relating to or arising out of the Kronos Outage, including, without limitation, all state, local, and federal claims for unpaid wages (whether minimum wage or overtime), failure to timely pay wages, failure to record hours worked, paystub requirements, regular rate claims, reimbursement, and all related claims for statutory damages or penalties, interest, liquidated damages, attorneys' fees, costs, expenses, and all other such amounts, and including, without limitation, all claims that have been asserted in the Lawsuit or that could have been asserted in the Lawsuit nationwide, including but not limited to:

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

i.   All claims for unpaid wages, including but not limited to regular wages, minimum wages, and overtime wages in accordance with state, local, or federal law;

ii.  All claims for liquidated damages under the FLSA and all claims for penalties, interest, or other damages of any kind under any other applicable state or local wage-and-hour law;

iii. All claims relating to the calculation or payment of wages, failure to timely pay wages, failure to record hours worked, paystub requirements, regular rate claims, recoupment of overpayment, reimbursement, and all related claims for statutory damages or penalties arising under the FLSA and/or any other applicable state or local wage-and-hour law or common law;

iv.  All claims for conversion, breach of contract, quantum meruit, unjust enrichment, theft of labor, or other common law or statutory cause of action related to any alleged failure to pay for work performed or to be performed; and

v.   All related claims for interest, costs, and attorneys' fees.

b.   **Release Printed on Notice of Settlement to Putative FLSA Collective Members.** The Parties agree to include mutually agreed upon release language in the Notice of Settlement and Consent to Join Form attached as Exhibit C, which will be tendered to Putative FLSA Collective members.

c.   **General Release by Smith.** In exchange for payment of a General Release Payment, Smith releases the Releasees from all claims or disputes made (or that could have been made) under federal, state or local law, common law, statute or regulation, including, but not limited to: (1) any and all wage-and-hour claims of any nature whatsoever, including claims for alleged misclassification, salary basis violations, overtime pay, minimum wages, non-payment of wages, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind, including retaliation; (2) any and all claims of discrimination, harassment or retaliation including, but not limited to, claims for age discrimination under the Age Discrimination in Employment Act ("ADEA"), disability claims, retaliation claims, employee benefits claims; and (3) any claim, dispute, damages, or allegation of any nature whatsoever arising under any federal, state or local common law, regulation, constitution, or statute against any of the Releasees based on facts or circumstances existing up through and including the date of this Agreement. Excluded from this general release are any claims that cannot be waived as a matter of express law, including the right to file a charge with or participate in an investigation conducted by any federal, state, or local EEOC or fair employment practice agency; provided, however, that Smith

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

waives any right to recover any monetary damages or other relief for any claim waived by this general release should any agency pursue a claim on her behalf.

SETTLEMENT IMPLEMENTATION

**4.    Approval of Settlement.**

a.    All terms of this Settlement Agreement are contingent upon the approval of the settlement and certification by the Court of the FLSA Collective for settlement purposes only.

b.    Within 7 calendar days of the execution of this Settlement Agreement, the Parties shall file a joint motion for approval of this settlement with the Court.

c.    Provided the Court approves this settlement, Collective Counsel and Releasees' Counsel shall cooperate to secure the approval and dismissal with prejudice of the Lawsuit.

d.    The Parties agree that if the Court declines to approve this settlement the Parties agree to meet and confer in good faith to resolve any issues identified by the Court and to resubmit a revised settlement to the Court for approval. If the Parties cannot agree to resolve a dispute, they agree to take the dispute to the previous mediator, Hunter Hughes, Esq., to attempt to resolve such dispute.

**5.    Stipulation for Certification.**

a.    The Parties hereby stipulate, for settlement purposes only, to the following:

  i.    Certification of the of the Putative FLSA Collective, for settlement purposes only, as defined herein, pursuant to 29 U.S.C. § 216(b);

  ii.    Notification of the settlement to the Putative FLSA Collective, as defined herein, pursuant to 29 U.S.C. § 216(b), in the forms of **Exhibit A** (the "**Notice of Settlement**") and **Exhibit C** (the "**Consent to Join Form**");[1]

  iii.    The designation of Sharnee Smith as the Named Plaintiff and Collective Representative; and

  iv.    The appointment of Plaintiffs' Counsel as Collective Counsel.

b.    If the settlement is not approved by the Court, Releasees' stipulations pursuant to this Section 5 shall ultimately be null and void, and may not be used or relied

---

[1] Smith and Releasees recognize that the final Notice of Settlement may require modification for administrative reasons or to address any non-material alterations suggested or required by the Court. The final Notice of Settlement will not be issued absent joint agreement to any changes.

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

upon by anyone for any purpose whatsoever in this Lawsuit, or any other judicial, administrative, or arbitral proceeding. For the avoidance of doubt, in the event the settlement described in this Settlement Agreement is not approved by the Court or the Effective Date described in Section 6 does not occur, Sodexo does not waive, and instead expressly reserves, its right to challenge and assert all arguments about the propriety of certification of any FLSA collective. The Parties further agree that, other than to effectuate the settlement of this Lawsuit, the certification of the FLSA Collective for settlement purposes and all documents related thereto, including this Agreement and all accompanying exhibits and all orders entered by the Court in connection with this Agreement, shall not be admissible in any judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, including without limitation any wage-and-hour litigation against any of the Releasees.

c.     The settlement is contingent upon the Court's certification of the FLSA Collective and Court approval of the notice to the Putative FLSA Collective members, as defined in this Settlement Agreement. If the FLSA Collective is not certified by the Court or if notice of the settlement to the FLSA Collective or the Putative FLSA Collective is not approved by the Court and/or is materially modified in any way, the Settlement Agreement may be voided at either Party's option.

**6.     Effective Date**. The settlement shall become effective when all the following events have occurred:

a.     This Agreement has been executed by Smith and Releasees;

b.     The Court has approved the settlement, including by certifying the FLSA Collective and approving notice to the Putative FLSA Collective, as defined in this Settlement Agreement, in the form of the Notice of Settlement; and

c.     The Court's entry of an Order Approving Settlement and this Court's order regarding attorneys' fees, costs, and general release award all become final because the following has occurred: (a) the expiration of three (3) business days after the time to file a motion to alter or amend the Final Approval Order under Federal Rule of Civil Procedure 59(e) has passed without such a motion having been filed; (b) the expiration of three (3) business days after the time in which to appeal the Order Approving Settlement has passed without any appeal having been filed (which date shall be deemed to be thirty-three (33) days following entry of the Order Approving Settlement); and (c) if such motion to alter or amend is filed, or if an appeal is taken, three (3) business days after a determination of such motion or appeal that permits the consummation of the settlement.

SETTLEMENT FUNDS AND AWARD CALCULATION

**7.     Settlement Amount**.

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

a. **Gross Cash Settlement Amount**. The total settlement amount to be made available in the "common fund" is $3,100,000 (the "**Gross Settlement Amount**").

b. **Non-Cash Settlement Relief in the Form of No Recoupment of Overpayments**. Releasees agree that they shall waive any legal right they may have to recoup any overpayment amounts made to FLSA Collective members resulting from the Kronos Outage that have not been collected yet by Sodexo. The approximate overpayment amount for which Sodexo is agreeing to forego recoupment is $8,000,000.

c. **Funding of Cash Settlement**. Within 21 days of the Effective Date, Releasees shall cause to be deposited into an interest-bearing escrow account designated as a Qualified Settlement Fund pursuant to the Internal Revenue Code (the "**QSF**") designated by Smith and under the control of the Settlement Administrator, the amount of $3,100,000.

d. **Settlement Awards**. Each of the Putative FLSA Collective members shall be mailed a Notice and Consent to Join Form that will set forth an estimate of his or her settlement award from the Net Settlement Amount (each a "**Settlement Award**") should he or she choose to execute the Consent to Join Form and opt-in to the Lawsuit. The formula for distribution of the Net Settlement Amount is set forth on **Exhibit B** and shall be calculated by the Settlement Administrator.

8. **Process for Mailing the Notice of Settlement and Consent to Join Form, to Putative FLSA Collective Members.**

a. Within 21 calendar days after the Effective Date, Releasees shall provide the Settlement Administrator with a list, in Microsoft Excel or Comma Separated Value format, of the names, employee numbers, last known physical addresses, and email addresses (where in Releasees employee records) of all Putative FLSA Collective members ("**Collective List**"), so that the Settlement Administrator can process and mail the Notice of Settlement and Consent to Join Forms to all Putative FLSA Collective members.

b. Within 21 days of the Settlement Administrator's receipt of the Collective List and funds in the QSF, the Settlement Administrator will, in the following order: (1) determine the amount of the Net Settlement Amount (as defined in Section 1(i)) available for distribution to the Putative FLSA Collective members; (2) using the formulas set forth in Exhibit B, issue the Notice of Settlement and Consent to Join Form (which will include each Putative FLSA Collective member's approximate settlement amount should they choose to opt-in), to all Putative FLSA Collective members by USPS First Class U.S. Mail ("Notice Mailing Date") and (3) disburse to Plaintiffs' Counsel the attorneys' fees and cost payment approved by the Court via wire, with instructions to be provided

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

by Plaintiffs' Counsel. The Settlement Administrator shall certify in writing to the Parties' counsel the date that such mailing has been made.

c.    Prior to mailing, the Settlement Administrator will use all standard skip tracing devices or similar means to verify the accuracy of all physical addresses in the Collective List in order to ensure, to the extent reasonably practicable, that the Notice of Settlement and Consent to Join Forms are sent to all Putative FLSA Collective members at the physical addresses most likely to result in receipt of the Notice of Settlement and Consent to Join Form. This will include running the addresses through the National Change of Address database. With respect to returned envelopes, the Settlement Administrator will use reasonable diligence to obtain a current address and re-mail the envelope to such address within 10 days of the receipt of the returned envelope. Any Notices returned undeliverable during the Administration Period (defined below) shall be traced up to two times to obtain a new address and be re-mailed by First Class U.S. Mail.

d.    Putative FLSA Collective members shall have 60 days from the date of mailing to submit their completed Consent to Join Forms, which must be either postmarked by, or e-mailed or facsimiled and received on or before the 60th day ("Claims Period"). To the extent any mailed Notice and Consent to Join Form is returned as undeliverable, such person shall be permitted 45 days from any re-mailing of the Notice and Consent to Join Form to submit their Consent to Join Form. The Settlement Administrator shall also issue a reminder notice at the 30 day mark to those individuals who have not yet returned their Consent to Join Form at that time.

e.    Within 10 days following the expiration of the Claims Period (including any extension for re-mailing) ("Claims Period Expiration Date"), the Settlement Administrator will identify all Putative FLSA Collective members who returned executed Consent to Join Forms and therefore chose to opt-in to the case ("FLSA Collective members"). The Settlement Administrator will provide Plaintiffs' counsel with copies of all Consent to Join Forms received from the FLSA Collective members. Plaintiffs' counsel will file the Consent to Join Forms and a list of all individuals who opted-in with the Court within 5 days of receipt of the Consent to Join Forms.

f.    Within 20 days following the Claims Period Expiration Date, the Settlement Administrator will send Settlement Checks to each of the FLSA Collective Members in the amount of their individual settlement payments determined using the formulas set forth in Exhibit B ("Settlement Check Mailing Date").

g.    Within 10 days following the Settlement Check Mailing Date, counsel for the parties will file a Stipulation of Dismissal with Prejudice with the Court requesting that the Lawsuit be dismissed with prejudice.

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

h.  Each Settlement Check shall be valid for 90 days after issuance. In the event that a Settlement Check is lost or damaged, the FLSA Collective member may request at any time within the 90-day period that a replacement check be issued. Within 21 days of a request for reissuance, a check for the amount of the expired check shall be issued to the requesting FLSA Collective member, which shall be valid for 90 days after issuance.

i.  Any portion of the Net Settlement Amount that is unclaimed by members of the Putative FLSA Collective shall be returned to Sodexo. The total amount of any uncashed checks issued to the FLSA Collective shall also revert back to Sodexo.

j.  All fees and costs incurred by the Settlement Administrator in administering this settlement, which shall include but not be limited to all fees and costs for: reproducing the Notice of Settlement and Consent to Join Forms; producing checks for FLSA Collective Members; postage to send the Notice of Settlement and Consent to Join Forms Putative FLSA Collective Members and postage to send the Settlement Checks to FLSA Collective members; notifying the Putative FLSA Collective members of the Lawsuit; performing skip tracing services; mailing appropriate tax forms to FLSA Collective Members; and other fees reasonably incurred by the Settlement Administrator and approved by the Parties (the "**Administration Costs**") shall be paid to the Settlement Administrator from the Gross Settlement Amount.

k.  The "**Administration Period**" is the period of time beginning on the date when the Gross Settlement Amount is paid to the Settlement Administrator through the later of:

    i.  the date that all of the settlement checks have been cashed and/or deposited by FLSA Collective members; or

    ii.  where the time for requesting a replacement check has passed for all FLSA Collective members and any replacement check requested has been issued, the date on which all uncashed and/or deposited checks (including replacement checks) have expired.

l.  Within 30 days following the Administration Period ("Final Accounting Date"), the Settlement Administrator shall provide a full accounting to Collective Counsel and Releasees' Counsel ("Final Accounting") which will include the following:

    i.  The total Administration Costs;

    ii.  The total amount of the cashed and/or deposited settlement checks (the "**Claimed Net Settlement Amount**"); and

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

iii.    The total amount of the Net Settlement Amount remaining in the QSF which shall be returned to Sodexo.

i.    **Reversion Date**. Funds due back to Sodexo as set forth in the Final Accounting will be returned to Sodexo via wire within 30 days of the Final Accounting Date. Sodexo will provide wiring instructions to the Settlement Administrator.

9.    **Treatment of Settlement Awards by Collective Groups**.

a.    The Settlement Award for each FLSA Collective member who is designated a "Net-Under" employee shall constitute 50% wages and 50% liquidated damages under the FLSA. As such, a "Net-Under" FLSA Collective member shall receive a W-2 for the wage portion and an IRS Form 1099 for the liquidated damages portion from the Settlement Administrator. Withholdings on wages will be made in accordance with applicable law.

b.    The entire amount of Settlement Award for each FLSA Collective Member who is designated a "Net Under Previously Paid" and/or "Non-Exempt Protected States" will constitute liquidated damages in connection with the FLSA Collective members' claims under the FLSA and state law. No taxes or withholdings will be deducted, and the FLSA Collective members will be solely responsible for paying all applicable taxes. The Settlement Administrator will issue to each FLSA Collective member here an IRS Form 1099.

c.    Each FLSA Collective member will be responsible for the payment of any additional local, state, or federal taxes or withholdings resulting from or attributable to the payments received.

10.    **Collective Counsel's Attorneys' Fees and Costs**.

a.    Smith and/or Collective Counsel may petition the Court for an award of attorneys' fees and expenses in conjunction with the Parties' settlement in an amount not to exceed 1/3 of the Gross Cash Settlement Amount. Releasees shall not oppose a request for fees and expenses up to and including this amount.

b.    The funds for the payment of approved attorneys' fees and expenses shall be paid to Collective Counsel by the Settlement Administrator at the same time as the Putative FLSA Collective members' Notice of Settlement and Consent to Join Forms are mailed as outlined in paragraph 8(b) above.

c.    The attorneys' fees and costs paid by the FLSA Collective shall constitute full satisfaction of Releasees' obligations to pay amounts to any person, attorney, or law firm for attorneys' fees or costs in the Lawsuit on behalf of FLSA Collective members, and shall relieve Releasees from any other claims or liability to any other attorney or law firm for any attorneys' fees or costs to

- 11 -

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

which any of them may claim to be entitled on behalf of FLSA Collective members.

    d.    An IRS Form 1099 shall be provided to Collective Counsel for the payment of attorneys' fees and expenses made to Collective Counsel through Releasees. Each firm constituting Collective Counsel shall be solely and legally responsible to pay applicable taxes on the payment made to that firm.

**11.    General Release Payment**. In exchange for signing a General Release releasing all claims against Releasees, which is set forth above in Section 3, and in recognition of her participation on behalf of the Putative FLSA Collective members in this lawsuit, Smith may seek approval of a payment not to exceed $5,000. This award is in addition to Smith's individual Settlement Award, if any. Releasees agree not to object to such application. The General Release Payment shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099 (box 3), and shall not be subject to FICA and FUTA withholding taxes. The General Release Payment shall be paid from the Gross Settlement Amount.

**12.    No Claim Based Upon Distributions or Payments in Accordance With This Settlement Agreement**. No person shall have any claim against Smith, any FLSA Collective member, Releasees, the Settlement Administrator, Collective Counsel, or Releasees' Counsel based on distributions or payments made in accordance with this Settlement Agreement.

MISCELLANEOUS

**13.    Releasees' Legal Fees**. Releasees' legal fees, costs, and expenses in the Lawsuit shall be borne by Releasees.

**14.    Nullification of the Settlement Agreement**. In the event the settlement does not become final for any reason, this Settlement Agreement shall be null and void, and the Parties shall be returned to the status quo ante. If this occurs, the Parties shall proceed in all respects as if the Settlement Agreement had not been executed subject to the provisions in Sections 2 and 16.

**15.    Severability**. If for any reason any term or provision of this Settlement Agreement is held to be invalid or unenforceable to any extent, then (a) such term or provision will be interpreted, construed, or reformed to the extent reasonably required to render the same valid, enforceable, and consistent with the original intent underlying such provision; (b) such term or provision will remain in effect to the extent that it is not invalid or unenforceable; and (c) such invalidity or unenforceability will not affect any other term or provision of this Settlement Agreement; provided however, that the paragraphs included in Section 3 (Release, Gross Settlement Amount, and Net Settlement Amount) are material terms whose inclusion is essential to this Settlement Agreement. If any term or provision is held to be invalid or unenforceable to any extent, or if is edited or reformed in any way, then this Settlement Agreement may be voided at either Party's option. The Parties agree to cooperate to address and resolve any such issues as they arise, and to use reasonable, good-faith efforts to uphold the settlement reached by the Parties.

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

**16.     Inadmissibility of Settlement Agreement**. Except for purposes of (a) settling the Lawsuit or (b) enforcing this Agreement, neither this Settlement Agreement, nor its terms, nor any document, statement, proceeding, or conduct related to this Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication, or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession, or damage.

**17.     Computation of Time**. For purposes of this Settlement Agreement, if the prescribed time period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by Federal Rule of Civil Procedure 6(a)(6)), such time period shall be continued to the following business day.

**18.     Amendment or Modification**. This Settlement Agreement may be amended or modified only by a written instrument signed by the Parties or their successors in interest or by duly authorized counsel for such persons or entities. Any such amendment or modification will only become effective upon approval by the Court. Other than a Court deadline, any deadline in this Agreement may be extended by agreement of the Parties.

**19.     Entire Settlement Agreement**. This Settlement Agreement constitutes the entire agreement between the Parties, and no oral or written representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in such documents. All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations, whether written or oral, are expressly superseded hereby and are of no further force and effect. Each of the Parties acknowledges that, in entering into this Settlement Agreement, they have not relied on any promise, representation, or warranty, express or implied, not contained in this Agreement.

**20.     Binding on Successors and Assigns**. This Agreement shall be binding upon, and inure to the benefit of Smith, the FLSA Collective, Releasees, and each of their heirs, beneficiaries, executors, administrators, successors, transferees, successors, or assigns.

**21.     Counterparts**. This Settlement Agreement may be executed in one or more counterparts, including by electronic signature, facsimile, or email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

**22.     Cooperation and Drafting**. The Parties have cooperated in the drafting and preparation of this Settlement Agreement; hence the drafting of this Settlement Agreement shall not be construed against any of the Parties. The Parties agree that the terms and conditions of this Settlement Agreement were negotiated at arm's-length and in good faith by the Parties, and the terms and conditions reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel, or the full and unimpeded opportunity to consult with such legal counsel.

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

23. **Bona Fide Dispute**. The Parties agree this Settlement Agreement is a resolution of a bona fide dispute and related claims. Nothing in this Settlement Agreement constitutes an admission that Releasees violated any applicable law.

24. **Captions**. The captions or headings of the sections and paragraphs of this Settlement Agreement have been inserted for convenience of reference only and shall have no effect on the construction or interpretation of any part of this Settlement Agreement.

25. **Authority of Releasees' Signatories**. By executing this Settlement Agreement, each Releasee entity represents and warrants that it is a business entity, existing and in good standing under the laws of its state of formation, and that the person executing this Settlement Agreement on its behalf is fully authorized to bind it. The person executing this Settlement Agreement on each entity's behalf likewise represents and warrants that they have been authorized to execute and enter into this Settlement Agreement on behalf of the respective entity.

26. **Continuing Jurisdiction**. This Agreement is subject to the continuing jurisdiction of the Court to construe, interpret and enforce the provisions of this Agreement and to supervise the administration and distribution of the resulting settlement funds.

27. **Signature**. An electronic or facsimile signature shall be deemed to be an original for all purposes.

28. **Choice of Law and Venue of Disputes**. This Settlement Agreement shall be construed under Maryland law, without regard to any choice of law principles, except to the extent any law of the United States governs any matter set forth, in which case federal law shall govern. Any dispute arising under this Settlement Agreement shall have venue exclusively in the United States District Court for the District of Maryland.

29. **Acknowledgment.** Each Party executing this Settlement Agreement confirms they are doing so knowingly and voluntarily and that they have read this Settlement Agreement, have understood it, and have entered into it after being advised by their respective attorneys, or with the complete opportunity to do so.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

*Sharnee smith*

Date: 07 / 11 / 2024

Sharnee Smith
individually and on behalf of the FLSA Collective

*Signatures continue on the following page*

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

DocuSigned by:

*Rohit Bahety*

93B73829D7594AF...

On behalf of Sodexo, Inc.
Rohit Bahety
Chief Financial Officer NorAm Region

Date: 7/12/2024 _____

DocuSigned by:

*Rohit Bahety*

93B73829D7594AF...

On behalf of Sodexo Management, Inc.
Rohit Bahety
Chief Financial Officer NorAm Region

Date: 7/12/2024 _____

DocuSigned by:

*Rohit Bahety*

93B73829D7594AF...

On behalf of Sodexo Operations, LLC
Rohit Bahety
Chief Financial Officer NorAm Region

Date: 7/12/2024 _____

**EXHIBIT A**

**NOTICE OF SETTLEMENT**

(Attached)

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

**NOTICE OF LAWSUIT AND SETTLEMENT OF WAGE CLAIMS FOR EMPLOYEES OF SODEXO RELATED TO KRONOS OUTAGE**

---

**TIME-SENSITIVE, COURT-AUTHORIZED NOTICE**
**\* \* \* This is not an advertisement from a lawyer. \* \* \***

---

**This Notice explains your legal rights and options regarding a lawsuit and settlement with Sodexo for employee wage claims regarding the Kronos Outage beginning in December 2021**

| **1.** | **What is this about?** |
|---|---|

A lawsuit was filed against Sodexo, Inc., Sodexo Management, Inc., and Sodexo Operations, LLC, ("Sodexo") for unpaid overtime under a federal law, the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* The case is *Smith v. Sodexo, Inc. et al.,* No. 8:22-cv-00984-PX, in the United States District Court for the District of Maryland.

The lawsuit involves certain non-exempt employees who worked for Sodexo during the time period from December 6, 2021 to March 12, 2022, and whose pay may have been affected by the Kronos system outage, which affected pay periods between December 6, 2021 and March 12, 2022.

The lawsuit was filed by Sharnee Smith, a former employee of Sodexo, who believes that she and other employees were not paid properly and/or on time after Kronos Private Cloud, which Sodexo used for certain time-keeping and payroll functions, experienced an outage ("Kronos Outage"). The lawsuit claims that Sodexo did not timely or accurately pay employees for all hours worked between December 6, 2021 and March 12, 2022, due to the Kronos Outage.

The Court has not determined that Sodexo is liable or did anything wrong. Instead, the employees and Sodexo reached a settlement to resolve the case without further litigation. The Court overseeing the lawsuit has approved that settlement. As a result, certain non-exempt employees who worked for Sodexo during the Kronos Outage may join the lawsuit and receive a payment in connection with the settlement.

| **2.** | **Why am I getting this notice?** |
|---|---|

You have been identified from Sodexo records as an employee who worked for Sodexo during the Kronos Outage and who is eligible to recover money from the settlement. To be eligible to join the lawsuit and participate in this settlement:

- You must have been employed by Sodexo as a non-exempt employee during the time period from December 6, 2021 to March 12, 2022, in a job where you tracked working time using Kronos Private Cloud (or would have tracked working time using Kronos Private Cloud but for the Kronos Outage); **and**

- You must have been classified under the Settlement Agreement in this case as a "Net-Under" employee (potentially underpaid); a "Net-Under Previously Paid" employee (potentially not paid "on time"), and/or a "Non-Exempt Protected States" employee (an employee who worked in one or more of the following states: AZ, CA, CT, IL, IN, MA, MD, ME, NJ, NM, NY, OH, VA, WA).

In order to recover money as part of the settlement, you must join the lawsuit by signing and returning the attached Consent to Join Form. If you do not join the lawsuit, you will not receive any money.

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

| 3. | What is my share of the settlement |
|---|---|

Some of Sodexo's employees affected by the Kronos Outage were potentially underpaid during the outage. Others may have been overpaid, and others potentially were "paid late."  Your settlement payment is based on a formula that takes into account the amounts you were paid during the Kronos Outage and when you received those amounts.

Based on this, each employee eligible to participate in this settlement, including you, was classified as a "Net-Under" employee (potentially underpaid); a "Net-Under Previously Paid" employee (potentially "paid late" and/or a "Non-Exempt Protected States" employee (an employee who worked in one or more of the following states: AZ, CA, CT, IL, IN, MA, MD, ME, NJ, NM, NY, OH, VA, WA).

If you were a "Net-Under" employee, you will receive one check representing fifty percent (50%) wages, and fifty percent (50%) "liquidated damages," which is a proportional amount representing potentially delayed wages, based on the amount in the settlement fund.

If you were a "Net-Under Previously Paid" employee, you will receive one check representing "liquidated damages," which is a proportional amount of your potentially delayed wages, based on the amount in the settlement fund.

If you were a "Non-Exempt Protected States" employee, you will receive one check representing potential state law penalties for working in certain states for Sodexo.  This payment will be divided on a per-person basis based on the total number of individuals in this group and based on the amount in the settlement fund.

If you fall within more than one of the above categories, you will receive one check representing payment for all the categories above into which you fall.

The total estimated amount you will receive if you choose to join this lawsuit and participate in the settlement is $[AMOUNT].

| 4. | How do I get the money offered? |
|---|---|

| To join the lawsuit and settlement:

SIGN AND RETURN THE CONSENT FORM | If you choose to join the lawsuit and be included in the settlement, all you need to do is sign and return the attached Consent Form. | **Deadline: DATE** |
|---|---|---|
| To stay out of the lawsuit and settlement:

DO NOTHING | If you do not want to join the lawsuit and participate in this settlement, then you should <u>not</u> sign or return the attached Consent Form. By doing nothing, you will retain your rights and not release any claims, but you give up the possibility of getting money from the settlement of this lawsuit. If you were overpaid, you may also be required to repay Sodexo for any overpayment made to you that has not already been repaid. | **No deadline.** |

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

**5.    What happens if I sign and return the enclosed Consent Form?**

If you sign and return the Consent Form, you agree to the following:

You will be acknowledging that you (i) are joining this lawsuit, (ii) you are represented by PARMET PC and MORGAN & MORGAN, P.A. (together, the "Collective Attorneys"), (iii) you will be bound by the terms of the attorney-client agreement signed by Sharnee Smith, and (iv) you will be bound by the terms of the Settlement Agreement signed by Sharnee Smith. You will **not** have to pay the Collective Attorneys any money directly. Sodexo is paying attorneys' fees and costs as part of the settlement as a percentage of the overall recovery. In addition, the Court has approved a service award to Sharnee Smith, the former employee who filed the lawsuit, which will also be paid from the settlement fund.

By signing and returning the Consent Form you will be opting-in to the lawsuit and joining the settlement. You understand that by doing so, you are waiving and releasing all wage and hour claims against Sodexo related to the Kronos Outage, including but not limited to those for unpaid wages, late payment of wages, and overtime, including overtime and penalties under federal, state and local law, during the period beginning December 1, 2021 and ending on [APPROVAL DATE], related to the Kronos Outage.

**6.    What does the Court think?**

While the Court approved this settlement, the Court did not determine that Sodexo (or anyone else) did anything wrong or is liable. The Court did not determine you are owed any money. Instead, this is a settlement payment reached as a compromise between the parties to avoid further litigation.

**Do not contact the Court regarding this settlement. The Court must remain neutral in this matter and cannot give you advice.**

**7.    What does Sodexo think?**

Sodexo does not agree it did anything wrong or that it is liable in this case. Sodexo also claims you were paid correctly and fairly for your hours worked. Sodexo also does not agree that a collective action (group lawsuit) is appropriate. Sodexo does agree, however, that this settlement is a fair resolution to this lawsuit. No adverse employment action will be taken against you because you choose to join or not join this lawsuit and settlement.

**8.    How long do I have to make a decision?**

**The deadline to join the lawsuit and settlement is 60 days after this notice was sent, which is [DATE].**

**9.    I still have questions. Where can I get more information?**

This Notice is only a summary. If you would like, you can obtain certain documents related to the case. However, the deadline for signing and returning your Consent Form will not be extended. Please contact the Settlement Administrator for any questions about the settlement:

[SETTLEMENT ADMINISTRATOR INFO]

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

If you have any questions about the collective action or your legal rights, you should contact the attorneys for the relevant group of Sodexo employees:

Matthew S. Parmet
PARMET PC
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone 713 999 5228
team@parmet.law

Andrew R. Frisch
MORGAN & MORGAN
8151 Peters Rd., 4th Floor
Plantation, FL 33324
phone 954-327-5355 | fax 954-327-3013
afrisch@forthepeople.com

Doc ID: 4d18eb8952373e9720a08827ca4c5bec69e0dfa4

**EXHIBIT B**

**FORMULA FOR DISTRIBUTION OF SETTLEMENT**

- For the Collective Groups, the Gross Settlement Amount shall be allocated as follows, prior to the deduction of court-approved attorneys' fees and costs, the General Release Payment, and administrative fees and costs (including those of the Settlement Administrator), which will be used to determine the Net Settlement Amount, as defined in Paragraph 1 of the Settlement Agreement and which will be the actual amount available for distribution to FLSA Collective members:

  1. For the "Net-Under" group: an estimated amount of $518,419 from the Gross Settlement Fund, to be allocated on a pro-rata share of their underpaid amount as compared to the total amount of the "Net-Under" Putative FLSA Collective members' aggregate underpayment amount. The actual amounts distributed will be determined by the portion of the Net Settlement Amount allocated to the "Net Under" group as described herein. For example, if an FLSA Collective member's personal underpayment amount was 0.1% of the total "Net-Under" Putative FLSA Collective members' aggregate underpayment amount, then that claimant shall receive 0.1% of the portion of the Net Settlement Amount allocated to the "Net-Under" group, as described herein. However, "Net-Under" FLSA Collective members shall each receive a minimum of $30 from the net settlement amount if their pro-rata share results in a potential payment of less than $30, unless such a calculation would result in an increase in the Gross Cash Settlement Amount. In that event, the FLSA Collective Members will receive their actual pro rata share. In no way will this result in an increase of the Gross Cash Settlement Amount.

  2. For the "Net-Under Previously Paid" group: an estimated amount of $1,297,931 from the Gross Settlement Fund, to be allocated on a pro-rata share of their allegedly late paid amount as compared to the total amount of the "Net-Under Previously Paid" Putative FLSA Collective members' aggregate allegedly late paid amount. The actual amounts distributed will be determined by the portion of the Net Settlement Amount allocated to the "Net Under Previously Paid" group as described herein. For example, if an FLSA Collective member's personal late paid amount was 0.1% of the total "Net-Under Previously Paid" Putative FLSA Collective members' aggregate allegedly late paid amount, then that FLSA Collective member shall receive 0.1% of the portion of the Net Settlement Amount allocated to the "Net-Under Previously Paid" group, as described herein. However, "Net-Under Previously Paid" FLSA Collective members shall each receive a minimum of $30 from the net settlement amount if their pro-rata share results in a potential payment of less than $30, unless such a calculation would result in an increase in the Gross Cash Settlement Amount. In that event, the FLSA Collective Members will receive their actual pro rata share. In no way will this result in an increase of the Gross Cash Settlement Amount.

3. For the "Non-Exempt Protected States" group: an estimated amount from the Gross Settlement Fund of $1,283,650, to be allocated on a per rata person basis using the total number of Putative FLSA Collective members in the "Non-Exempt Protected States" group. The actual amounts distributed to FLSA Collective members will be determined by the portion of the Net Settlement Amount allocated to the "Non-Exempt Protected States" group as described herein. In no way will this result in an increase of the Gross Settlement Amount.

**EXHIBIT C**

**CONSENT TO JOIN FORM**

**CONSENT TO JOIN AND RELEASE FOR SETTLEMENT OF WAGE CLAIMS AGAINST SODEXO**

Printed Name: _____

1.    I have read the notice regarding the settlement of the overtime lawsuit filed against Sodexo, and affiliated persons or entities (together, "Sodexo"). I understand that the lawsuit was brought under the Fair Labor Standards Act (FLSA). I understand the case was settled without any admission of liability by Sodexo, and the settlement was approved by the Court.

2.    I consent to join the lawsuit and participate in the settlement to recover damages for allegedly unpaid and/or late paid overtime and related damages during Sodexo's Kronos outage. I understand I will receive an amount based on my proportional share of the net settlement that will be paid to the employees that join the settlement. I understand that, in exchange for this payment, all wage claims against Sodexo and its current or former parent companies, subsidiary companies (indirect and direct), and/or related, affiliated, companies, partnerships, and/or joint ventures regarding the Kronos outage that I may have will be fully and finally settled. I understand that by submitting this Consent to Join Form, I am releasing all wage-and-hour claims that I may have against Sodexo related to the Kronos Outage, under the FLSA and applicable federal and state law, from December 6, 2021, through [insert date of court approval.]

3.    I consent to be bound by the Court's decisions.

4.    I designate the representative plaintiff, Sharnee Smith, as my agent to make decisions on my behalf regarding the lawsuit, including entering into settlement agreements, agreements with counsel, and all other matters related to the lawsuit.

5.    I understand and agree that my attorneys, the representative plaintiff, or the Court may in the future appoint other individuals to be representative plaintiff. I consent to the appointment and agree to be bound by the decisions made by the representative plaintiff regarding this matter.

_____    _____
Signature                            Date

**By signing, you designate PARMET PC and MORGAN & MORGAN as your attorneys for your wage claims. The portion of this form above the bold line will be filed with the Court. The information below will not be filed on any public court filing.**

_____
Email Address

_____
Cell Phone Number

_____
Address

_____
City / State / Zip

| TO JOIN, RETURN THIS FORM BY MAIL OR EMAIL: |
| --- |
| **Overtime Lawsuit Against Sodexo** |
| **ADMINISTRATOR** |
| **Administrator's Address** |
| **Administrator's Phone / Fax** |
| **Administrator's Email** |
| **OR COMPLETE ONLINE:** |
| **«hyperlink»** |

| QUESTIONS? You can contact the attorneys for the group of Sodexo employees: | |
| --- | --- |
| Matthew S. Parmet | Andrew R. Frisch |
| PARMET PC | MORGAN & MORGAN |
| Phone 713-999-5228 | Phone 954-327-5355 |
| team@parmet.law | afrisch@forthepeople.com |

**The deadline to submit this form is DATE. Forms submitted after this date WILL NOT be valid.**